| | | |
|---|---|---|
| LITTLE ARM INC. D/B/A B&B | ) | |
| DISTRIBUTIONS, BOHEMIAN | ) | |
| GROOVE LLC, MELX2 ENTERPRISES | ) | |
| INC., and IDK ANYTHING LLC, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:13-cv-00862-RLY-DML |
| | ) | |
| PROSECUTORS: ADAMS, ALLEN, | ) | |
| BARTHOLOMEW, BENTON, | ) | |
| BLACKFORD, BOONE, BROWN, | ) | |
| CARROLL, CASS, CLARK, CLAY, | ) | |
| CLINTON, CRAWFORD, DAVIESS, | ) | |
| DEARBORN, DECATUR, DEKALB, | ) | |
| DELAWARE, DUBOIS, ELKHART, | ) | |
| FAYETTE, FLOYD, FOUNTAIN, | ) | |
| FRANKLIN, FULTON, GIBSON, | ) | |
| GRANT, GREENE, HAMILTON, | ) | |
| HANCOCK, HARRISON, | ) | |
| HENDRICKS, HENRY, HOWARD, | ) | |
| HUNTINGTON, JACKSON, JASPER, | ) | |
| JAY, JEFFERSON, JENNINGS, | ) | |
| JOHNSON, KNOX, KOSCIUSKO, | ) | |
| LAGRANGE, LAKE, LA PORTE, | ) | |
| LAWRENCE, MADISON, MARION, | ) | |
| MARSHALL, MARTIN, MIAMI, | ) | |
| MONROE, MONTGOMERY, | ) | |
| MORGAN, NEWTON, NOBLE, OHIO, | ) | |
| ORANGE, OWEN, PARKE, PERRY, | ) | |
| PIKE, PORTER, POSEY, PULASKI, | ) | |
| PUTNAM, RANDOLPH, RIPLEY, | ) | |
| RUSH, ST. JOSEPH, SCOTT, SHELBY, | ) | |
| SPENCER, STARKE, STEUBEN, | ) | |
| SULLIVAN, SWITZERLAND, | ) | |
| TIPPECANOE, TIPTON, UNION, | ) | |
| VANDERBURGH, VERMILLION, | ) | |
| VIGO, WABASH, WARREN, | ) | |
| WARRICK, WASHINGTON, WAYNE, | ) | |
| WELLS, WHITE, WHITLEY | ) | |

COUNTIES,                                    )
             Defendants.                    )

**ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs, Little Arm Inc. d/b/a B&B Distributions ("Little Arm"), Bohemian

Groove LLC ("Bohemian"), MELX2Enterprises Inc. ("MELX2"), and IDK Anything

LLC ("IDK"), bring this action against all Prosecuting Attorneys in Indiana

("Defendants") seeking injunctive and declaratory relief as to Indiana Code 35-48-4-10.5,

which makes it illegal to possess, distribute, or manufacture any "synthetic drug lookalike

substance," as defined in Indiana Code § 35-31.5-2-321.5.  Plaintiffs allege that the

Statute violates due process and the equal protection clause under the U.S. Constitution

and the Indiana Constitution and is thus unconstitutional.  Defendants have moved to

dismiss Plaintiffs' state claims for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure.  Defendants also move for judgment on

the pleadings on Plaintiffs' federal claims pursuant to Rule 12(c) of the Federal Rule of

Civil Procedure.[1]  For the reasons set forth below, the court **GRANTS** the motion to

dismiss and **GRANTS IN PART** and **DENIES IN PART** the motion for judgment on

the pleadings.

## I.     Background

### A. Parties

---

[1] Plaintiffs initially moved for summary judgment on all counts.  (Docket # 99).  In Defendants' response to this motion, they also moved for judgment on the pleadings pursuant to Rule 12(b)(6).  A Rule 12(b)(6) motion filed after an answer has been filed is to be treated as a 12(c) motion for judgment on the pleadings; nevertheless, the motion is evaluated under the same standard as a Rule 12(b)(6) motion.  *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 757 n. 1 (7th Cir. 2006).  The court now turns to Defendants' motion, and Plaintiffs' motion for summary judgment will be addressed in a separate entry.

Plaintiffs are for-profit companies in Indiana that sell, among other things, aromatherapy products throughout Indiana. (Compl. ¶¶ 16-23). Little Arm is located in Fort Wayne; Bohemian is located in Huntington; MELX2 is located in Bloomington; and IDK is located in Carmel. (*Id*.). Defendants are prosecutors who are elected officials whose responsibilities include investigating and prosecuting criminal offenses (including those created by the Statute) within the various counties in the State of Indiana. (*Id*. at ¶ 24)

### B. Statute

Plaintiffs challenge the constitutionality of Indiana Code 35-48-4-10.5 ("Statute"), effective May 7, 2013, which criminalizes the possession, distribution, and manufacture of synthetic drugs and synthetic drug lookalike substances ("Lookalike Substances"). (Compl. ¶¶ 1, 28). Plaintiffs allege that Defendants have targeted their legal business with the Statute. (*Id*. at ¶ 25).

### 1. Penalties

The Statute provides various civil and criminal penalties for involvement with a synthetic drug or Lookalike Substance. For example, penalties for possession of a synthetic drug or Lookalike Substance may range from a Class B infraction to a Class D felony. Ind. Code 35-48-4-11.5. And the penalties for dealing these substances range from a Class A infraction to a Class C felony. Ind. Code 35-48-4-10.5. Additionally, if a retail merchant has (1) violated this statute by selling or offering to sell these substances in the normal course of business, and (2) the violation resulted in a criminal conviction,

then the court "shall recommend the suspension of the registered retail merchant certificate for the place of business for one (1) year." Ind. Code 35-48-4-10.5(d). If the violation resulted instead in an infraction, the court may suspend the retail merchant's certificate for six months. *Id*.

## 2. Definitions

The Indiana Code defines "synthetic drug" as a substance containing one or more of a multitude of specific chemical compounds, including an analog of the compound. Ind. Code § 35-31.5-2-321 (amended May 7, 2013). An "analog" is defined as a "new or novel chemical entity, independent of synthetic route or natural origin, having substantially the same: (1) carbon backbone structure; and (2) pharmacological mechanism of action; as a compound specifically defined as a synthetic drug . . . ." Ind. Code § 35-31.5-2-16.5. Moreover, a compound may be determined to be a synthetic drug under an emergency provision. Ind. Code § 35-31.5-2-321(13). This entails the Indiana Board of Pharmacy adopting an emergency rule to declare that a substance is a synthetic drug. Ind. Code § 25-26-13-4.1.

The Indiana Code defines a Lookalike Substance as one (1) or more of the following:

> (1)     A substance, other than a synthetic drug, which any of the factors listed in subsection (c) would lead a reasonable person to believe to be a synthetic drug.
>
> (2)     A substance, other than a synthetic drug:
>
> > (A)     that a person knows or should have known was intended to be consumed; and

        (B)     the consumption of which the person knows or should have known to be intended to cause intoxication.

Ind. Code Ann. § 35-31.5-2-321.5. The factors listed in the Statute which may be considered in determining whether a substance is a Lookalike Substance include:

(1) the overall appearance of a dosage unit of the substance;

(2) how the substance is packaged for sale or distribution, including its shape, color, size, markings or lack of markings, taste, consistency, and any other identifying physical characteristics;

(3) any statement made by the owner or person in control of the substance concerning the substance's nature, use, or effect;

(4) any statement made to the buyer or recipient of the substance suggesting or implying that the substance is a synthetic drug;

(5) any statement made to the buyer or recipient of the substance suggesting or implying that the substance may be resold for profit;

(6) the overall circumstances under which the substance is distributed, including whether:

       (A) the distribution included an exchange of, or demand for, money or other property as consideration; and

       (B) the amount of the consideration was substantially greater than the reasonable retail market value of the substance the seller claims the substance to be.

*Id*. The definition excludes, however, the following: (1) food and food ingredients, (2) alcohol, (3) a legend drug (as defined in Indiana Code 16-18-2-199), (4) tobacco, or (5) a dietary supplement (as defined in Indiana Code 6-2.5-1-16). *Id*.

### 3. State Enforcement

Plaintiffs allege that prior to the Statute's enactment, law enforcement targeted Plaintiffs' customers and vendors in an attempt to dissuade them from conducting

business with Plaintiffs. (Compl. ¶ 39). Also, law enforcement searched and seized products from Little Arm on December 20, 2012; Bohemian on May 29, 2012, and September 18, 2012; and MELX2 on January 17, 2013. (*Id*. at ¶ 40). These searches and seizures were all related to the aromatherapy products sold by the respective stores. (*Id*.).

After the Statute's enactment, Indiana State Excise Police ("Excise") seized from a non-party a product manufactured by Little Arm, claiming it to be a Lookalike Substance. (*Id*. at ¶ 41). Excise also threatened adverse action against another business if it chose to sell aromatherapy or air freshener products sold by the Plaintiffs. (*Id*. at ¶ 42).

In addition, the Indiana Department of Revenue website contains a flyer entitled "Legal Notice: Illegal Drugs, Marketed as 'Spice,' 'Incense,' 'Potpourri,' 'Plant Food,' and 'Bath Salts'" ("Flyer"). (*Id*. at ¶ 51, Ex. F).[2] The Flyer could be accessed on the website page for "New and Small Business Education Center"; specifically, under the link which states, "If you are operating a convenience store or plan to sell bath salts, spice or synthetic drugs, click here." (*Id*., Ex. G). The Flyer is endorsed by the Indiana State Police, Indiana Attorney General, Indiana State Department of Health, Indiana Board of Pharmacy, and the Indiana Sheriffs' Association. (*Id*., Ex. F). The Flyer summarizes the various penalties and remedies for manufacturing, distributing, or possessing synthetic drugs. (*Id*.). The bottom of the Flyer states in bold, capital letters, "**RELIANCE ON PACKAGING REPRESENTATIONS, SUPPLIER REPRESENTATIONS, AND**

---

[2] Plaintiffs have neither alleged the date the Flyer was posted on the website nor does the exhibit reference any date. Defendants argue that the Flyer had been posted months before the Statute was enacted. Nonetheless, the date of publication for the Flyer is not relevant to this motion.

**LAB REPORTS SHALL BE DONE AT YOUR OWN RISK**." (*Id*.). The Flyer does

not, however, mention Lookalike Substances.

Due to the above State actions, Plaintiffs allege that they have suffered a

significant loss of revenue and goodwill in their respective communities and will

continue to suffer such losses if Defendants continue to target Plaintiffs' lawful business

activities. (*Id*. at ¶ 43).

### 4. Efforts to Comply with Statute

Indiana law enforcement maintains that Plaintiffs' products contain Lookalike

Substances, but Plaintiffs have made several efforts to comply with federal and Indiana

law. (*Id*. at ¶ 44). For example, Plaintiffs' aromatherapy products are in packaging

which conspicuously warns that the products are not intended for human consumption

and also provides instructions for proper usage. (*Id*. at ¶ 45). In addition, Plaintiffs had

reputable laboratories test their proposed aromatherapy products to ensure they complied

with federal and Indiana law. (*Id*. at ¶ 47). Such testing, however, is no longer sufficient

to determine if the contents of the products fall into the definition for a Lookalike

Substance. (*Id*. at ¶ 48). In fact, the laboratory that previously tested Plaintiffs' products

now refuses to provide an opinion as to whether Plaintiffs' aromatherapy products fall

within this definition. (*Id*. at ¶ 49).

Plaintiffs maintain, however, that their products do not contain synthetic drugs.

Nonetheless, because of the confusion over the definition of a Lookalike Substance,

Plaintiffs claim they are in immediate danger of direct injury stemming from prosecution,

searches, and seizure. (*Id*. at ¶ 60). And conducting sample polls to determine what a

reasonable person thinks is a Lookalike Substance would come at a substantial cost to Plaintiffs. (*Id.* at ¶ 58). As a result, if law enforcement determines that Plaintiffs' aromatherapy products contain Lookalike Substances, then they will have to shut down their respective businesses because such products constitute a large percentage of their gross revenue. (*Id.* at ¶ 50). Ultimately, this would deny all economically beneficial or productive use of the inventory. (*Id.* at ¶ 57).

### 5. Constitutional Claims

Plaintiffs now claim the Statute is unconstitutional under the U.S. Constitution and the Indiana Constitution. Plaintiffs allege that the Statute violates due process because it is impermissibly vague on its face and as applied to them; in particular, they claim the Statute fails to provide definite notice as to what behavior is criminalized and invites arbitrary and discriminatory enforcement. Plaintiffs also bring equal protection claims arguing, among other things, the products exempted from the Statute and the factors used in defining a Lookalike Substance are arbitrary and irrational. Lastly, Plaintiffs claim the Statute constitutes a regulatory taking of property because their products may be seized by law enforcement without either warning or just compensation and thus leaves no reasonable economically viable use for their aromatherapy products.

Plaintiffs seek a declaratory judgment that the Statute is unconstitutional in its entirety both on its face and as applied to them. In the alternative, Plaintiffs seek a preliminary injunction enjoining the enforcement of the Statute. Defendants now move

to dismiss Plaintiffs' state law claims on jurisdictional grounds while also moving for judgment on the pleadings as to their federal due process and equal protection claims. [3]

## II.    Standard

### A. Rule 12(c) Motion

Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. FED.R.CIV.P. 12(c). Motions for judgment on the pleadings are reviewed under the same standard as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local Union 150,* AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003). In deciding such a motion, the court will consider only the pleadings – that is, the complaint, answer, and any written instruments attached as exhibits. *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

Factual allegations in the complaint must be sufficient to raise the possibility of relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although detailed allegations are not required, the plaintiff must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

---

[3] Neither party has addressed the regulatory takings claim in their briefs, so the court will assume this claim still remains.

That said, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* At bottom, the motion tests the legal sufficiency of a complaint, not the merits of the case. *United States v. Clark Cnty., Ind.*, 113 F. Supp. 2d 1286, 1290 (S.D. Ind. 2000).

### B. Rule 12(b)(1) Motion

Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction.[4] The plaintiff has the burden of proving that jurisdiction requirements are met. *Kontos v. United States Dep't of Labor,* 826 F.2d 573, 576 (7th Cir. 1987). The court accepts all well-pleaded allegations from the complaint as true and makes any reasonable inferences in the plaintiff's favor. *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1116 (S.D. Ind. 2011). That said, in contrast to a Rule 12(b)(6) motion, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). The court will first turn to the jurisdictional issues before reaching the merits of Defendants' Rule 12(c) motion. *See Kimble v. Postmaster Gen.*, No. 1:11-cv-0826, 2012 WL 1833682, at *1 (S.D. Ind. May 18, 2012) *aff'd sub nom. Kimble v. Donahoe*, 511 F. App'x 573 (7th Cir. 2013).

---

[4] Although Defendants bring their jurisdictional argument within a motion for judgment on the pleadings, the court will still analyze this argument under Rule 12(b)(1). *Stefanski v. McDermott*, No. 1:08-cv-00123, 2009 WL 418254, at *1 n. 3 (N.D. Ind. Feb. 17, 2009). A party may raise a lack of subject matter jurisdiction through a Rule 12(c) motion, but the analysis is ultimately one under Rule 12(b). *See Thompson v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989); 5 Wright & Miller, Federal Practice & Procedure: Civil § 1367 (Rule 12(c) may be used to raise several of the 12(b) defenses).

### III.    Discussion

#### A.  Motion to Strike

Plaintiffs move to strike portions of Defendants' brief that impermissibly inject matters outside the pleadings.  This includes the following statements:

- Here, the listing of synthetic drugs is necessary to keep up with the industry, which slightly modifies the chemical formula and claims it's a new drug not listed and thus not illegal.  (Defs.' Mem. 14-15).

- Plaintiffs' products are not as heavily regulated as is the case with food, tobacco, alcohol, legend drugs or dietary supplements.  (*Id.* at 15).

- In this case, lookalike synthetic drugs are far more dangerous than tobacco, alcohol, and vitamin supplements in that the lookalike drugs are not regulated for quality by state and federal agencies and their effects have not been well-studied, only well-documented in terms of serious mental health issues, illness, and death.  (*Id.* at 17).

- The limited studies that have been done indicate that synthetic drugs are worse than the original drugs.  They're not milk and they don't do a body good.  (*Id.*).

In deciding a Rule 12(c) motion, the court may only consider the complaint, answer, and any written instruments attached as exhibits.  These statements are not found in any of these.  Defendants, however, contend that the court should either characterize them as argument or take judicial notice of them.  The above statements are not simply argument as they reference studies and regulations not set forth in the pleadings.  And these statements are not subject to judicial notice because they are in dispute.  *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (stating a court may take judicial of notice of facts that are "(1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through

sources whose accuracy cannot be questioned").  The court therefore gives no weight to the above statements and strikes them from Defendants' brief.

On the other hand, as Defendants contest, some statements that Plaintiffs claim are injecting facts are merely argument addressing facts included in the pleadings.  Some examples include:

- That [Flyer] is likely older as lookalikes, first the subject of legislation in 2013, aren't mentioned. (Defs.' Mem. 7).

- The "reasonable person" standard prevents cat nip, dryer bags and condoms from being considered synthetic drug lookalike substances – no reasonable person would believe that those items are considered synthetic drug lookalike substances.  (*Id*. at 11).

- [Food, tobacco, alcohol, legend drugs and dietary supplements] cannot be reasonably believed to be synthetic drugs.  Their nature and identity is well-known.  (*Id*. at 15).

- The legislature has determined, with good reason, that the harmful effects of plaintiffs' products are significantly greater than the exempt items.  (*Id*.).

- There is no incentive to violate the law to provide an illegal substance without consideration.  (*Id*. at 16).

- People who deal drugs do so for one reason: it is profitable.  (*Id*.).

These statements do not inject new facts into the motion; rather, they interpret facts asserted by Plaintiffs.  For example, a simple observation of the Flyer allows the court to conclude that Lookalike Substances are not referenced, and Plaintiffs allege in their complaint when the Statute became effective.  (*See* Compl. ¶ 1).  Moreover, any statements concerning the "reasonable person" standard and its accompanying rhetoric are used by courts and police officers every day.  Lastly, the remaining statements are

simply Defendants' interpretation of the Legislature's rationale for passing the statute and utilizing the respective criteria. This is simply rhetoric, not fact. At its core, these statements are merely arguments, and the court will treat them as such. Accordingly, Plaintiffs' Motion to Strike (Docket # 106) is thus **GRANTED IN PART** and **DENIED IN PART**.

### B.  State Law Claims

Plaintiffs seek injunctive relief for violations of the equal protection clause and due course of law clause of the Indiana Constitution. Defendants argue that Plaintiffs' claims are barred by the Eleventh Amendment and thus the court lacks jurisdiction over them.

"The Eleventh Amendment forbids federal courts from exercising subject matter jurisdiction over claims for injunctive relief against state officials based on state law." *Bibbs v. Newman*, 997 F.Supp. 1174, 1178 (S.D. Ind. 1998). The question of whether an official acts as a state official for purposes of the Eleventh Amendment is a matter of federal law, but the "court's understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *Id.* at 1178 (quoting *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997)). Particularly, the court "must look more specifically at the office's particular function at issue in the case." *Id.*; *see also McMillian*, 520 U.S. at 785 (whether sheriff acted as state or county official would not be decided in a "categorical, 'all or nothing' manner," but would depend on function at issue in the particular case).

The Seventh Circuit has held that Indiana prosecutors are state officials when prosecuting criminal cases because: (1) the office is a creation of the Indiana Constitution; (2) state statutes govern the prosecutor's duties and powers; (3) the state determines the prosecutor's salary; and (4) the state provides legal representation if a prosecutor is sued in a civil action arising out of official duties. *Srivastava v. Newman*, 12 Fed. Appx. 369, 371 (7th Cir. 2001). Moreover, district courts in Indiana have held in a variety of contexts that prosecutors were state officials for Eleventh Amendment purposes. *See, e.g., Bibbs*, 997 F.Supp. at 1178-81 (finding that a prosecuting attorney in Indiana acts as a state official when prosecuting criminal cases and when hiring and firing deputy prosecuting attorneys); *Study v. U.S.*, 782 F.Supp. 1293, 1297 (S.D. Ind. 1991) (finding deputy prosecutors held a position of state office even though they were employed by a specific county). Accordingly, the court finds Defendants are state officials for Eleventh Amendment purposes.

Despite extensive case law to the contrary, Plaintiffs make several arguments attempting to remove the jurisdictional bar from their state law claims, but none have merit. First, Plaintiffs claim that the Statute can also lead to civil infractions in addition to criminal penalties and that no pending criminal case is present. But Plaintiffs do not provide any support that this distinction has any impact on the jurisdictional bar. In addition, Plaintiffs' own complaint runs counter to this, as it states the Statute "criminalizes the possession, distribution, and manufacture of synthetic drug lookalike substances." (Compl. ¶ 28). Although certain actions may result in civil infractions, the thrust of the complaint concerns the Statute's criminal penalties.

Next, Plaintiffs claim that even if the Eleventh Amendment bars their state claims, the court may still exercise supplemental jurisdiction, or pendant jurisdiction, over Plaintiffs' state constitutional claims. This misstates the law. "The Eleventh Amendment is an explicit limitation on the judicial power of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984). As such, "pendant jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment" and thus does not "override the Eleventh Amendment." *Id*. at 121.

Similarly, Plaintiffs argue that even if the court does not have the authority to issue an injunction against Defendants as to their state claims, a declaratory judgment is still an available remedy. The type of remedy at issue does not override the Eleventh Amendment bar – this jurisdictional bar applies regardless of the nature of the relief sought. *Id.* at 100; *see also Benning v. Bd. of Regents of Regency Universities*, 928 F.2d 775, 778 (7th Cir. 1991) (stating the "issuance of a federal declaratory judgment as a step toward a state damage or injunctive remedy would operate as an end-run around *Pennhurst* that is equally forbidden by the Eleventh Amendment"). Plaintiffs' state law claims cannot escape the Eleventh Amendment bar. The court therefore grants Defendants' motion as to Plaintiffs' state law claims.

### C. Federal Claims

Plaintiffs bring several federal claims, including those for due process and equal protection violations. Unlike their state law claims, *Pennhurst* does not bar these claims, as they fall under the doctrine articulated in *Ex Parte Young*. 209 U.S. 123, 159-60 (1908). This well-established exception to the Eleventh Amendment bar allows "private

citizens to sue state officials in their official capacities [in federal court] to require them to comply with federal law on an ongoing basis." *McDonough Associates, Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013). Plaintiffs' federal claims against Defendants, as state actors, fall under this exception. Accordingly, the court now turns to the sufficiency of these claims.

## 1. Justiciability

Article III limits the powers of the Federal Judiciary to the resolution of "Cases" or "Controversies." *Arizona Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1441 (2011). A case or controversy requires a claim that is ripe and a plaintiff who has standing. *Indiana Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). These concepts are related yet distinct, as ripeness concerns *when* an action may be brought, while standing focuses on *who* may bring a ripe action. *Id*. (citation omitted). Defendants challenge both of these requirements.

### a. Standing

Constitutional standing requires: (1) plaintiff who has suffered an "injury in fact"; (2) a causal connection exists between the injury and the conduct complained of; and (3) it is "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *Arizona Christian*, 131 S.Ct. at 1442. An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*.

A person contesting a criminal statute does not have to "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters

16

the exercise of his constitutional rights." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Instead, a person may satisfy the injury-in-fact requirement by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Id.* Such a pre-enforcement challenge, as Plaintiffs assert here, is well-established to be within Article III cases or controversies. *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012); *see also American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 591 (7th Cir. 2012) (finding the "existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper [under Article III], because a probability of future injury counts as 'injury' for the purpose of standing"). On the other hand, "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 (1971). For example, plaintiffs who fail to claim that (1) they have ever been threatened with prosecution, (2) prosecution is likely, or (3) prosecution is remotely possible, do not allege a dispute susceptible to resolution by a federal court. *Id.*

Plaintiffs here have sufficiently pled an injury-in-fact. They allege that Defendants, by their actions and through public statements in the media, have targeted their businesses as the intended focus of the Statute. (Compl. ¶ 25). A credible threat of prosecution also exists as Plaintiffs allege several examples of state actors regulating their products. For example, prior to the Statute's enactment, some Plaintiffs were subject to

searches and seizures in relation to their respective aromatherapy products. (*Id.* at ¶ 40). And after the Statute became effective, Excise allegedly (1) seized from a non-party products manufactured by Little Arm, claiming they were lookalike substances; and (2) threatened adverse action against a non-party if they sold Plaintiffs' products. (*Id.* at ¶¶ 41, 42). Moreover, the Indiana Department of Revenue published a Flyer warning convenience stores, such as the Plaintiffs, of the illegality of selling certain substances. (*Id.* at ¶¶ 51-53). In sum, Plaintiffs face a credible risk of prosecution by Defendants for violations of the Statute. *See Steffel*, 415 U.S. at 459 (holding plaintiff could bring claim despite statute never being enforced against him where officers had threatened him with arrest on two prior occasions and had arrested one of his fellow protestors for distributing similar materials). Thus, Plaintiffs have sufficiently pled standing for a pre-enforcement challenge.[5] *See Nova Records v. Sendak,* 706 F.2d 782, 786 (7th Cir. 1983) ("Because the *potential application* of the statute poses a sufficient risk to the plaintiffs, they have standing to bring a pre-enforcement challenge.") (emphasis in original).

Nevertheless, Defendants contend that *Babbit* and its progeny do not apply here because no First Amendment claims are present. Though *Babbit* and many other pre-enforcement challenges involve First Amendment rights, they do not distinguish First Amendment constitutional claims as the *only* claims within this framework. Instead, *Babbit* states that a person must show intent to "engage in a course of conduct arguably

---

[5] Plaintiffs also may have standing due to their alleged economic loss. *See Gov't Suppliers Consolidating Servs., Inc. v. Bayh*, 734 F. Supp. 853, 858 (S.D. Ind. 1990) (stating that economic injury alone is sufficient to confer standing). Due to the enactment of the Statute, Plaintiffs have allegedly suffered a significant loss of revenue and goodwill in their respective communities and will continue to suffer an adverse economic impact. (*Id.* at ¶ 43).

affected *with a constitutional interest*, but proscribed by statute . . . ." 442 U.S. at 298 (emphasis added); *see also Steffel*, 415 U.S. at 459 ("it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the *exercise of his constitutional rights*") (emphasis added). The court finds no reason – nor have the Defendants provided any reason – to hold that constitutional interests of due process and equal protection do not also satisfy this test. *See also Ezell v. City of Chicago*, 651 F.3d 685, 695-96 (7th Cir. 2011) (finding plaintiffs' pre-enforcement challenge to ordinance satisfied injury-in-fact requirement for standing where Second Amendment rights were impinged); *Doe v. Prosecutor, Marion Cnty., Ind.*, 566 F. Supp. 2d 862, 875 (S.D. Ind. 2008) (holding party could bring a pre-enforcement challenge based on the Fourth Amendment). Thus, Defendants' objection fails.

### b. Ripeness

Defendants further argue that Plaintiffs' claims are not ripe. The ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (citation omitted). These concerns are present when a case "involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). In making

19

this determination, the court must consider "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co.*, 461 U.S. at 201.

Defendants argue that Plaintiffs' claims are not ripe because Plaintiffs have neither been arrested under the Statute, nor does the record contain anything that demonstrates an arrest is imminent or remotely likely; thus, the enforcement of the Statute is entirely speculative. Instead, Defendants argue that the court should wait for someone to be prosecuted under the Statute to see how the Statute is actually being enforced instead of analyzing its hypothetical enforcement.

Defendants' arguments are unpersuasive. This is not a case in which several future events must occur before the constitutionality of the Statute is at issue. *Cf. Texas v. United States*, 523 U.S. 296, 300 (1998) (finding claim not ripe for adjudication because it rested on myriad of contingent future events and it was not clear whether the sanction at issue would ever be ordered). Plaintiffs claim it is impossible for them to determine whether their products fall within the definition of a Lookalike Substance because the vagueness of the Statute prevents any notice. At the same time, Excise has seized their products from a non-party on the basis of being a Lookalike Substance. (Compl. ¶ 41). Thus, the only remaining future event is Plaintiffs' arrest for violating the Statute. Although Plaintiffs do not know if or when they may face prosecution, this is not fatal as all pre-enforcement suits involve a "degree of uncertainty about future events." *Alvarez*, 679 F.3d at 594.

Even more, Plaintiffs face severe hardship if the court refuses to consider their issues at this time. They may either pull all products that could potentially be encompassed under the Statute, which could lead to financial ruin, or they can continue selling all of their products and risk arrest and suspension of their retail merchant's certificate. The court will not force such a radical choice. *See Babbit*, 442 U.S. at 303 ("If the provision were truly vague, [plaintiffs] should not be expected to pursue their collective activities at their peril"); *Doe v. Prosecutor*, 566 F. Supp. 2d at 876 (finding plaintiffs entitled to seek immediate relief where forced to risk prosecution for a felony or the immediate loss of expectation of privacy in their home). Plaintiffs' claims are ripe for judicial resolution.

## 2. Due Process

The void for vagueness doctrine stems from "the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012). Plaintiffs' complaint alleges that the Statute is "unconstitutional in its entirety both on its face and as applied to the Plaintiffs." (Compl. Request for Relief). Although the Seventh Circuit has acknowledged that facial challenges and as-applied challenges can overlap conceptually, the court will analyze the sufficiency of each challenge distinctly. *Madigan*, 697 F.3d at 475.

### i. As-applied Challenge

In analyzing an as-applied challenge, the court must only examine the facts of the case before it, "not any set of hypothetical facts under which the statute might be unconstitutional." *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

Defendants maintain that Plaintiffs have neither been arrested pursuant to the Statute, nor have they admitted to selling substances referenced in the Statute, and thus they lack standing to bring an as-applied challenge.

*Nova Records* provides guidance for this issue. 706 F.2d 782. There, tobacco accessory dealers brought an action challenging the constitutionality of an Indiana drug paraphernalia statute. *Id.* at 783. The plaintiffs claimed all items sold at their stores – including water pipes, "bong" pipes, and chamber pipes – had a recognized and established legal use, but they chose to remove some of this merchandise from their shelves to preclude being charged under the statute. *Id.* at 785. Plaintiffs had not been arrested under the statute, but the court took judicial notice that two other arrests had been made pursuant to the statute. *Id.* In holding the plaintiffs did not have standing to challenge the statute as applied, the Court reasoned that plaintiffs did not allege that they sold any merchandise subject to the statute, nor had the police arrested anyone associated with the plaintiff pursuant to the statute. *Id.* Because no judicial determination existed as to whether the statute prohibited plaintiffs' activities, the Court found "there is no case or controversy regarding application of the statute that involves these plaintiffs." *Id.*

Just as *Nova Records*, Plaintiffs have neither acknowledged selling materials regulated by the Statute, nor have they – or anyone else – been arrested pursuant to the Statute. At bottom, no facts are present for the court to examine here because the Statute has not yet been applied to the Plaintiffs or anyone. *See Hegwood*, 676 F.3d at 603 ("When we are confronted with an as-applied challenge, we examine *the facts of the case before us exclusively* and not any set of hypothetical facts under which the statute might

be unconstitutional.") (emphasis added).  As the Seventh Circuit observed, "it is hard to see how a court can evaluate an as-applied challenge sensibly until a law *is* applied, or application is soon to occur and the way in which it works can be determined."  *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 650 (7th Cir. 2010) (holding political promoter's as-applied challenge to constitutionality of city ordinance requiring special services was premature); *see also Madigan*, 697 F.3d at 475 (finding non-profit organization did not lay foundation for as-applied challenge to financial disclosure requirements where it had not broadcast any communications so it would be impossible for Court to fashion a remedy tailored to their particular speech activities).

Nevertheless, Plaintiffs attempt to distinguish *Nova Records* on the grounds that law enforcement has investigated Plaintiffs under the synthetic drug statute, thus creating a presumption that they will be similarly threatened by the Lookalike Statute.  This is precisely the type of hypothesizing that the court is precluded from doing in an as-applied challenge.  Moreover, the Court in *Nova Records* rejected applications of the statute at issue to other parties as conferring as-applied standing, so the application of another statute which is not even present in the suit is even further attenuated.  Plaintiffs therefore do not have standing to bring an as-applied challenge.

### ii.    Facial Challenge

Plaintiffs' inability to bring an as-applied challenge, however, does not end the inquiry into whether they can bring a plausible due process challenge.  Defendants argue that Plaintiffs can only bring an as-applied challenge, but Plaintiffs contend they may

bring a facial challenge to the Statute under the standard set forth in *Hoffman Estates* and *Nova Records*.

Defendants point to several cases which state that vagueness challenges to statutes which do not involve First Amendment rights must be examined on an as-applied basis. *See, e.g., U. S. v. Mazurie*, 419 U.S. 544, 550 (1975); *United States v. Stephenson*, 557 F.3d 449, 456 (7th Cir. 2009); *United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006). Though the court does not question this well-established principle, it is not applicable here. Indeed, the procedural posture of cases where this standard is applicable does not fit the challenge here, as they involved defendants who have already been convicted under the statute at issue. *See Mazurie*, 419 U.S. at 545-46 (operators of bar challenged statute as unconstitutionally vague after they were convicted); *Stephenson*, 557 F.3d at 451 (defendant appealed conviction on grounds that statute was unconstitutionally vague); *Lim*, 444 F.3d at 912 (defendant challenging constitutionality of statute after being convicted).

By contrast, Plaintiffs here make a pre-enforcement challenge to a statute which has not been applied to them, or anyone, for that matter. It is axiomatic that a pre-enforcement challenge to a statute will not have facts to examine as to how it has been applied to the Plaintiffs. In fact, this is the essence of allowing pre-enforcement challenges – a person should not have to risk arrest or face financial ruin to challenge the constitutionality of a statute. Accordingly, Plaintiffs are not barred from bringing a facial challenge to the Statute, so the court will evaluate the sufficiency of this claim. *See Nova Records,* 706 F.2d at 786 (holding plaintiffs could not bring an as-applied challenge to

24

statute which had not been applied to their activities, but instead the Court would evaluate as a facial challenge).

When examining a facial challenge, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct," namely the First Amendment. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). If the challenged statute does not implicate First Amendment rights – as Plaintiffs concede here – the court must uphold the vagueness challenge "only if the enactment is impermissibly vague in all of its applications." *Id.* at 494-95; *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (stating facial challenge is "the most difficult challenge to mount successfully" because the challenger "must establish that no set of circumstances exists under which the Act would be valid"). In other words, Plaintiffs must show that the Statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

Such standards are not mechanical, as the degree of vagueness allowed under the Constitution depends in part on the nature of the enactment. *Hoffman Estates*, 455 U.S. at 498. For example, the court has less tolerance for ambiguities of criminal statutes because the consequences are more severe. *Id.* at 498-99. To that end, a criminal statute may be found unconstitutionally vague if it either: (1) fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; or (2) authorizes and even encourages arbitrary and discriminatory enforcement. *City of Chicago v.*

*Morales*, 527 U.S. 41, 56 (1999). With these principles in mind, the court turns to Plaintiffs' facial challenge of the Statute.

Here, Plaintiffs have alleged that due to the ambiguity of the Statute, they can "no longer determine whether the current contents of their respective aromatherapy products will fall within the [Lookalike Substance] Definition." (Compl. ¶ 48); *see Morales*, 527 U.S. at 60 (finding ordinance unconstitutionally vague where entire ordinance "fails to give the ordinary citizen adequate notice of what is forbidden and what is permitted"). In addition, a laboratory previously used by Plaintiffs to determine whether their products adhere to federal and Indiana law now refuses to provide an opinion as to whether Plaintiffs' products are considered Lookalike Substances under the Statute. (*Id.* at ¶¶ 47-49). As a result, Plaintiffs have sufficiently alleged that the Statute lacks fair notice as required under the due process clause. *See Big Hat Books v. Prosecutors*, 565 F. Supp. 2d 981, 996 (S.D. Ind. 2008) (granting summary judgment where statute concerning the selling of sexually explicit materials was unconstitutionally vague because the requirement to provide a statement detailing these types of materials did not provide any guidance to merchants attempting to comply with the law); *Morales*, 527 U.S. at 58 ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.") (citation omitted).

Moreover, Plaintiffs allege that the Statute uses irrational and subjective factors to determine whether a substance is within the Statute, and this leads to arbitrary and discriminatory enforcement of the Statute against business owners such as Plaintiffs. (*Id.* at ¶ 4). For example, Plaintiffs claim factors enumerated in the Statute for defining a

Lookalike Substance, such as selling products for consideration and using similar packaging to that used for known synthetic drugs would allow law enforcement to arbitrarily enforce the Statute against them. Plaintiffs admittedly do both of these. (Compl. ¶¶ 61, 66). When drawing all reasonable inferences in Plaintiffs' favor, they have set forth a claim to relief that is plausible on its face. This, of course, does not mean the court has decided the Statute is unconstitutionally vague, but only that Plaintiffs have set forth a plausible claim. Defendants' motion is thus denied on Plaintiffs' due process claim concerning the facial validity of the Statute.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The government may classify persons and make distinctions in the creation and application of laws, but those classifications may not be based on "impermissible criteria or arbitrarily used to burden a group of individuals." *Lake Cnty. Clerk's Office v. Smith*, 766 N.E.2d 707, 712 (Ind. 2002) (citation omitted). Unless a law impinges a suspect classification or a fundamental right, it must withstand only rational basis scrutiny to be upheld. *Decker v. City of Indianapolis*, No. 01-1885, 2002 WL 1585622, at *2 (S.D. Ind. July 17, 2002). Because the parties here agree that the Statute impinges neither a suspect classification nor a fundamental right, the rational basis test applies.

Under this level of review, the Statute is presumed constitutional, and "a classification cannot run afoul of the Equal Protection Clause if there is a rational

relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993). The Seventh Circuit noted that a "perplexing situation" is presented when this standard meets the liberal standard applied to a dismissal under Federal Rule of Civil Procedure 12(b)(6).[6] *Wroblewski v. City of Washburn,* 965 F.2d 452, 459 (7th Cir. 1992). Nevertheless, the court must "take as true all of the complaint's allegations and reasonable inferences that follow" and then "apply the resulting 'facts' in light of the deferential rational basis standard." *Id.* at 460. To survive, Plaintiffs must "allege facts sufficient to overcome the presumption of rationality that applies to governmental classifications." *Id.*

Defendants argue that Plaintiffs' equal protection claim fails because there is a rational basis for (1) the products which are exempted from the Statute, and (2) the factors used in determining whether something is deemed a Lookalike Substance. Plaintiffs' response to this motion does not address Defendants' arguments; rather, they simply state the standard for judgment on the pleadings, list allegations in the complaint, and make a conclusory finding that they have shown a plausible claim. This is grossly deficient. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (stating "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it"). It is not the court's role to research and construct the legal arguments for parties, particularly those who are represented by counsel. *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996); *see also Keller v.*

---

[6] As the court noted above, a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

*United States*, 58 F.3d 1194, 1196 n. 3 (7th Cir. 1995) ("It is certainly not [the court's]

task to make arguments that the parties do not make."); *Bonte v. U.S. Bank, N.A.*, 624

F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Thus, Plaintiffs have not overcome the presumption of rationality that applies to

government classifications. The court therefore grants Defendants' motion as to

Plaintiffs' equal protection claim.

Even if the court considered arguments raised by the Plaintiffs in their motion for

summary judgment, their equal protection claim would still fail on the merits. Plaintiffs

appear to concede that the Statute attempts to serve the legitimate governmental interest

of protecting the public. *See, e.g., Record Head Corp v. Sachen*, 682 F.2d 672, 679 (7th

Cir. 1982) (finding city had a legitimate interest "in stemming the tide of drug abuse,

which adversely affects the public health, safety, morals and general welfare"). But they

contend the following are not rationally related to this interest: (1) the factors used to

identify a Lookalike Substance, and (2) the exemptions made in the Statute for certain

products. Moreover, Plaintiffs seem to argue that they have an equal protection claim

because they would be extraordinarily burdened by the Statute. As a matter of

completeness, the court will quickly address these arguments, though it has no obligation

to do so.

Plaintiffs heavily rely on *Milnot Co. v. Richardson*, 350 F.Supp. 221 (N.D. Ill.

1972), in support of their argument that it is irrational to use the factors enumerated in the

Statute to identify Lookalike Substances. There, the court ruled a statute violated a

manufacturer's due process rights where its dairy product could not be sold in interstate

commerce even though it had the same composition, appearance, and use as other imitation dairy products which could be shipped in such a way. *Id*. at 224-25. The court found that the incongruous treatment of products with similar ingredients that have "almost identical appearance and consistency . . . both in the package and when poured" was "devoid of rationality." *Id*. at 225. Plaintiffs contend that the Statute here produces similarly incongruous results by classifying substances based on pricing and packaging; for example, dangerous substances can be packaged in innocuous packaging while harmless products could be inside packaging typically used for synthetic drugs.

Plaintiffs' comparison misses the mark. The non-exhaustive factors listed in the Statute to determine whether a substance is a Lookalike Substance are simply factors one may consider. Nothing within the Statute deems any particular factor dispositive, and the crux of this standard is from the view of a reasonable person. Although Plaintiffs are correct that reliance on the product packaging may lead to the seizure of innocuous substances, that fact alone does not invalidate the Statute on equal protection grounds. Accordingly, the factors enumerated in the Statute have a rational basis. *See Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-88 (1955) (stating "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it"); *Record Head*, 682 F.2d at 679 (holding criminal drug paraphernalia ordinance did not violate the equal protection clause where factors used in statute were "not precise" but did not fail a rational basis test).

Moreover, the Legislature's exclusion of certain products was not arbitrary. The Legislature may have thought those products were being regulated by other means and did not find it necessary to include them in the Statute's purview; or it may have thought these products did not create the same dangers as synthetic drugs. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (stating that a "legislature need not strike at all evils at the same time or in the same way") (citation omitted). Even if these were not the Legislature's actual reasoning, a rational basis exists for these classifications which are connected to achieving a legitimate government interest. *See Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) ("Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized."); *United States v. Jester*, 139 F.3d 1168, 1171 (7th Cir. 1998) (stating the rational basis standard is "extremely respectful of legislative determinations and essentially means that [the court] will not invalidate a statute unless it draws distinctions that simply make no sense"). Thus, Plaintiffs' argument fails.

Lastly, Plaintiffs claim they would be extraordinarily burdened by the Statute's enforcement and would suffer substantial losses of business. To that end, Plaintiffs allege the Defendants have specifically targeted their stores both before and after the enactment of the Statute as to their sale of aromatherapy products. (Compl. ¶¶ 39, 42, 43, 56). First, any animus – real or perceived – directed at Plaintiffs in the passage of the Statute is irrelevant. Indeed, "a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008).

Thus, it "is only when the court can hypothesize no rational basis for the action that allegations of animus come into play." *Id.* As discussed above, a rational basis does exist for this Statute, so any alleged discriminatory treatment of stores selling items such as the Plaintiffs is not relevant.

Additionally, the Statute's reach may indeed hinder Plaintiffs' legitimate business practices, but this is not sufficient to meet this high burden because the court will not invalidate a challenged distinction simply because the "classification is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (internal quotations and citation omitted). Indeed, "the problems of government are practical ones and may justify, if they do not require, rough accommodations." *Id.* Thus, Plaintiffs' argument is not convincing.

In sum, Plaintiffs failed to negate all reasonably conceivable facts that would provide a rational basis for the Statute. As such, Plaintiffs have not met their heavy burden; therefore, Defendants' motion is granted as to Plaintiffs' equal protection claim. *See Council 31 of the Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 887 (7th Cir. 2012) (granting motion to dismiss and noting the heavy burden a plaintiff bears in asserting an Equal Protection claim subject to rational-basis scrutiny).

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (Docket # 104) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' due process claim concerning the facial validity of the Statute remains. In addition,

Plaintiffs' Motion to Strike (Docket # 106) is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED** this 31st day of March 2014.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.