LITTLE ARM INC. D/B/A B&B              )
DISTRIBUTIONS, BOHEMIAN                )
GROOVE LLC, MELX2 ENTERPRISES          )
INC., and IDK ANYTHING LLC,            )
      Plaintiffs,                      )
                                       )
      v.                               )    1:13-cv-00862-RLY-DML
                                       )
PROSECUTORS: ADAMS, ALLEN,             )
BARTHOLOMEW, BENTON,                   )
BLACKFORD, BOONE, BROWN,               )
CARROLL, CASS, CLARK, CLAY,            )
CLINTON, CRAWFORD, DAVIESS,            )
DEARBORN, DECATUR, DEKALB,             )
DELAWARE, DUBOIS, ELKHART,             )
FAYETTE, FLOYD, FOUNTAIN,              )
FRANKLIN, FULTON, GIBSON,              )
GRANT, GREENE, HAMILTON,               )
HANCOCK, HARRISON,                     )
HENDRICKS, HENRY, HOWARD,              )
HUNTINGTON, JACKSON, JASPER,           )
JAY, JEFFERSON, JENNINGS,              )
JOHNSON, KNOX, KOSCIUSKO,              )
LAGRANGE, LAKE, LA PORTE,              )
LAWRENCE, MADISON, MARION,             )
MARSHALL, MARTIN, MIAMI,               )
MONROE, MONTGOMERY,                    )
MORGAN, NEWTON, NOBLE, OHIO,           )
ORANGE, OWEN, PARKE, PERRY,            )
PIKE, PORTER, POSEY, PULASKI,          )
PUTNAM, RANDOLPH, RIPLEY,              )
RUSH, ST. JOSEPH, SCOTT, SHELBY,       )
SPENCER, STARKE, STEUBEN,              )
SULLIVAN, SWITZERLAND,                 )
TIPPECANOE, TIPTON, UNION,             )
VANDERBURGH, VERMILLION,               )
VIGO, WABASH, WARREN,                  )
WARRICK, WASHINGTON, WAYNE,            )

WELLS, WHITE, WHITLEY )
COUNTIES, )
                    Defendants.

## ENTRY ON PLAINTIFFS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY A PRELIMINARY INJUNCTION

Plaintiffs, Little Arm Inc. d/b/a B&B Distributions ("Little Arm"), Bohemian Groove LLC ("Bohemian"), MELX2 Enterprises Inc., and IDK Anything LLC, bring this action against all Prosecuting Attorneys in Indiana ("Defendants"), seeking injunctive and declaratory relief as to Indiana Code 35-48-4-10.5 ("Statute"). The Statute makes it illegal to possess, distribute, or manufacture any "synthetic drug lookalike substance," as defined in Indiana Code § 35-31.5-2-321.5. Plaintiffs alleged, among other things, that the Statute violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as well as Article I, Sections 12 and 23 of the Indiana Constitution.

On March 31, 2014, the court granted Defendants' motion for judgment on the pleadings on Plaintiffs' claims challenging the Statute under: (1) state law; (2) the federal Equal Protection Clause; and (3) the federal due process clause on an as-applied challenge. (Filing No. 110). The court also denied Defendants' motion as to Plaintiffs' federal due process claim challenging the Statute's facial validity. (*Id*.). The court then denied as moot Plaintiffs' motion for summary judgment on all claims which had been dismissed, ordered further briefing as to Plaintiffs' remaining facial due process challenge, and took Plaintiffs' alternative motion for preliminary injunction under advisement. (Filing No. 111).

In accordance with the court's Order on Schedule for Further Briefing, Plaintiffs filed their Supplemental Brief in Support of Their Request for Summary Judgment or Alternatively a Preliminary Injunction on April 21, 2014. That motion is now fully briefed and is the subject of this Entry. The court, having reviewed the parties' supplemental briefing along with the applicable case law, now **DENIES** Plaintiffs' Supplemental Motion for Summary Judgment; *sua sponte* **GRANTS** Defendants summary judgment; and **DENIES AS MOOT** Plaintiffs' alternative motion for a preliminary injunction.

## I.  Background[1]

### A. Parties

Plaintiffs are for-profit companies in Indiana that sell, among other things, aromatherapy products throughout Indiana. (Affidavit of Barry Bay ("Bay Aff.") ¶¶ 3, 5; Affidavit of Daniel J. Patterson ("Patterson Aff.") ¶¶ 3, 4; Affidavit of Mark Levenda ("Levenda Aff.") ¶¶ 3, 4). Defendants are prosecutors, who are elected officials, whose responsibilities include investigating and prosecuting criminal offenses (including those created by the Statute) within the various counties in the State of Indiana. Ind. Code § 33-39-1-5.

### B. Statute

---

[1] A more detailed recitation of the facts may be found in the court's prior entry on Defendants' Motion for Judgment on the Pleadings. *Little Arm Inc. v. Adams*, No. 1:13-cv-00862, 2014 WL 1324412 (S.D. Ind. Mar. 31, 2014).

Plaintiffs challenge the constitutionality of Indiana Code § 35-48-4-10.5, which criminalizes the possession, distribution, and manufacture of synthetic drugs and synthetic drug lookalike substances ("Lookalike Substances"). The Statute became effective May 7, 2013. Plaintiffs contend that Defendants have improperly targeted their legal businesses through their enforcement of the Statute. (Bay Aff. ¶¶ 26-32; Patterson Aff. ¶¶ 21-28; Levenda Aff. ¶¶ 23-28).

### 1. Definitions

The Indiana Code defines "synthetic drug" as a substance containing one or more of a multitude of specific chemical compounds, including an analog of the compound. Ind. Code § 35-31.5-2-321 (amended May 7, 2013). An "analog" is defined as a "new or novel chemical entity, independent of synthetic route or natural origin, having substantially the same: (1) carbon backbone structure; and (2) pharmacological mechanism of action; as a compound specifically defined as a synthetic drug . . . ." Ind. Code § 35-31.5-2-16.5. Moreover, a compound may be determined to be a synthetic drug under an emergency provision. Ind. Code § 35-31.5-2-321(13). This entails the Indiana Board of Pharmacy adopting an emergency rule to declare that a substance is a synthetic drug. Ind. Code § 25-26-13-4.1.

The Indiana Code defines a Lookalike Substance as one (1) or more of the following:

> (1)     A substance, other than a synthetic drug, which any of the factors listed in subsection (c) would lead a reasonable person to believe to be a synthetic drug.
>
> (2)     A substance, other than a synthetic drug:

4

(A)     that a person knows or should have known was intended to be consumed; and

(B)     the consumption of which the person knows or should have known to be intended to cause intoxication.

Ind. Code § 35-31.5-2-321.5.  The factors listed in the Statute which may be considered in determining whether a substance is a Lookalike Substance include:

(1) the overall appearance of a dosage unit of the substance;

(2) how the substance is packaged for sale or distribution, including its shape, color, size, markings or lack of markings, taste, consistency, and any other identifying physical characteristics;

(3) any statement made by the owner or person in control of the substance concerning the substance's nature, use, or effect;

(4) any statement made to the buyer or recipient of the substance suggesting or implying that the substance is a synthetic drug;

(5) any statement made to the buyer or recipient of the substance suggesting or implying that the substance may be resold for profit;

(6) the overall circumstances under which the substance is distributed, including whether:

(A) the distribution included an exchange of, or demand for, money or other property as consideration; and

(B) the amount of the consideration was substantially greater than the reasonable retail market value of the substance the seller claims the substance to be.

*Id*.  The definition excludes, however, the following: (1) food and food ingredients, (2) alcohol, (3) a legend drug (as defined in Indiana Code 16-18-2-199), (4) tobacco, or (5) a dietary supplement (as defined in Indiana Code 6-2.5-1-16).  *Id*.

## 2.  Penalties

The Statute provides various civil and criminal penalties for involvement with a synthetic drug or Lookalike Substance. For example, penalties for possession of a synthetic drug or Lookalike Substance may range from a Class B infraction to a Class D felony. Ind. Code § 35-48-4-11.5. And the penalties for dealing these substances range from a Class A infraction to a Class C felony. Ind. Code § 35-48-4-10.5. Additionally, if a retail merchant has (1) violated this statute by selling or offering to sell these substances in the normal course of business, and (2) the violation resulted in a criminal conviction, then the court "shall recommend the suspension of the registered retail merchant certificate for the place of business for one (1) year." Ind. Code § 35-48-4-10.5(f). If the violation resulted instead in an infraction, the court may suspend the retail merchant's certificate for six months. *Id*.

### C. State Enforcement

Plaintiffs claim that prior to the Statute's enactment, law enforcement targeted Plaintiffs' customers and vendors in an attempt to dissuade them from conducting business with Plaintiffs. (*See* Bay Aff. ¶¶ 52-53; Compl. ¶ 39). Moreover, law enforcement searched Plaintiffs' respective stores and seized aromatherapy products. (Bay Aff. ¶ 26; Patterson Aff. ¶¶ 21-23; Levenda Aff. ¶¶ 23-26). Since the enactment of the Statute, Plaintiffs' businesses have been struggling financially and are being forced to shut down in Indiana. (Bay Aff. ¶¶ 54-55; Patterson Aff. ¶¶ 43-44; Levenda Aff. ¶¶ 42-43).

### II.     Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To that end, a genuine dispute as to a material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

The burden is upon the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the movant believes demonstrates an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met his burden, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Parties may assert that "the materials cited do not establish the absence or presence of a genuine dispute," and parties may also object to the admissibility in evidence of the material cited. FED. R. CIV. P. 56(c)(1), (2). In determining whether a genuine issue of material fact exists, the court must view the facts "in the light most favorable to the nonmoving party and all reasonable inferences are drawn in her favor." *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). In short, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

If the court determines no genuine issue of material fact exists but that the law compels a judgment in favor of the non-movant, it may grant summary judgment in favor

of the non-movant, even in the absence of a cross-motion for summary judgment, as long as the movant has been provided an adequate opportunity to present its evidence and arguments. *See, e.g., Davis v. Milwaukee Cnty.*, 225 F. Supp. 2d 967, 970 (E.D. Wis. 2002) (citing 10A Charles A. Wright et al., Federal Practice and Procedure § 2720 Procedure on a Motion for Summary Judgment—Cross-motions and Summary Judgment Without a Motion (1998)); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Vill. of Orland Park*, 139 F. Supp. 2d 950, 957 (N.D. Ill. 2001) (citing *Kassbaum v. Steppenwolf Prods., Inc.,* 236 F.3d 487, 494 (9th Cir. 2000) ("It is generally recognized that a court has the power *sua sponte* to grant summary judgment to a non-movant when there has been a motion but no cross-motion.")).  In other words, "a district court may enter summary judgment in favor of a party even if no motion for relief of that sort has been filed"; however, such a finding "is inappropriate when it takes a party by surprise." *Goldstein v. Fid. & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996).

The court finds the grant of summary judgment in Defendants' favor will not prejudice the Plaintiffs, as the facts in this case are undisputed, and the issues have been thoroughly briefed by both parties.  *See Jones v. Union Pacific R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002) (holding plaintiff moving for summary judgment put both parties on notice that summary judgment was under "active consideration" and defendant's response brief requesting summary judgment put plaintiff on even "further notice"; thus, the district court did not err in granting defendant summary judgment *sua sponte*); *Goldstein*, 86 F.3d at 751 (finding district court was not wrong to *sua sponte* grant

summary judgment to nonmoving party where no genuine issue of material fact existed and the case turned on the judge's interpretation of the insurance policy).

### III. Discussion

Plaintiffs move for summary judgment on their void-for-vagueness claim brought under the Due Process Clause of the United States Constitution. Specifically, Plaintiffs argue that the Statute is impermissibly vague on its face, as it fails to provide definite notice as to what behavior is criminalized while also inviting arbitrary and discriminatory enforcement. Alternatively, if summary judgment is denied, Plaintiffs seek a preliminary injunction enjoining the enforcement of the Statute. Defendants did not file a cross-motion for summary judgment on this claim, but their response asks the court to not only deny Plaintiffs' motion, but also to enter judgment for them.[2]

The interpretation of a statute is a question of law, and such questions are particularly appropriate for summary judgment. *Masters v. Hesston Corp.*, 291 F.3d 985, 989 (7th Cir. 2002); *Longa v. Vicory*, 829 N.E.2d 546, 547 (Ind. Ct. App. 2005) ("The interpretation of a statute presents a pure question of law for which disposition by summary judgment is particularly appropriate."). With that in mind, the court turns to Plaintiffs' motion.

### A. Facial Due Process Challenge

A statute does not meet the requirements of the Due Process Clause "if it fails to define the offense with sufficient definiteness that ordinary people can understand what

---

[2] Specifically, Defendants' response states, "For all of these reasons, judgment should be entered for the defendants and against the plaintiffs." (Filing No. 115).

conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." *Fuller ex rel. Fuller v. Decatur Public School Bd. of Educ. Sch. Dist. 61*, 251 F.3d 662, 666 (7th Cir. 2001). The underlying rationale for this is twofold: (1) "[our society] assume[s] that man is free to steer between lawful and unlawful conduct, [so] we insist that laws give the person of ordinary intelligence the opportunity to know what is prohibited, so that he may act accordingly"; and (2) a "vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). That said, the due process clause does not demand "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Facial challenges to laws are disfavored, as they "often rest on speculation" and also raise a risk of "premature interpretation of statutes on the basis of factually barebones records." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008); *Sabri v. United States*, 541 U.S. 600, 609 (2004). Moreover, facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it, nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Washington*, 552 U.S. at 450.

### 1. Constitutionally Protected Conduct

In evaluating a facial challenge to the vagueness of a law, the court must first determine "whether the enactment reaches a substantial amount of constitutionally

protected conduct." *Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (stating that the "most important factor affecting the degree of clarity necessary to satisfy the Constitution is whether constitutional rights are at stake").   Such challenges are typically limited to enactments which impinge upon First Amendment rights.  *See, e.g., id.* at 495.  Although Plaintiffs concede that the Statute does not threaten First Amendment rights, they now argue that the Statute concerns "constitutionally protected conduct" because it "impact[s] liberties associated with engaging in commerce free of restraint."

In similar cases involving ordinances that related to economic regulation, the Seventh Circuit held that no constitutionally protected conduct was implicated.  For example, the Court stated that the ordinances at issue in *Record Head* and *Hoffman Estates* concerning bans on the sales of drug paraphernalia – objects that have both legal and illegal uses similar to the Statute at issue here – did not implicate freedom of speech and "no other constitutionally protected conduct is even arguably involved."  *Record Head Corp. v. Sachen*, 682 F.2d 672, 676 (7th Cir. 1982); *see also Clampitt v. City of Ft. Wayne*, 682 F.Supp. 401, 409 (N.D. Ind. 1988) (finding massage parlor and nude modeling ordinance containing licensing requirements did not implicate constitutionally protected conduct).  The court therefore finds that the Statute does not reach a substantial amount of constitutionally protected conduct.

## 2.  Applicable Standard

This finding does not resolve the dispute, though, as a statute may be facially unconstitutional even if it does not reach a substantial amount of constitutionally

11

protected conduct. *See, e.g.*, *Record Head*, 682 F.2d at 676-78. In such circumstances, Plaintiffs must show that the law is "impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 495; *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

This test should not be applied mechanically. *Hoffman Estates*, 455 U.S. at 498. Indeed, "the degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." *Id.* at 498. For example, the "Constitution tolerates a lesser degree of vagueness in enactments with criminal rather than civil penalties because the consequences of imprecision are qualitatively more severe." *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999). On the other hand, vagueness is more tolerable in economic regulation than in an ordinance of general applicability because such laws are "directed at people who are assumed to have some expertise and some ability to demand clarification." *Record Head*, 682 F.2d at 676. At bottom, "[c]ourts are obliged to favor interpretations which render a statute constitutional." *Clampitt*, 682 F.Supp. at 410 (citing *Mini Spas, Inc. v. South Salt Lake City Corp.*, 81 F.2d 939, 943 (10th Cir. 1987)).

Here, Plaintiffs argue that a reasonable person could not decipher what a "lookalike substance" is, nor could law enforcement have sufficient standards to enforce the Statute. It is with the above principles in mind that the court now evaluates the merits of each of these arguments.

### a. Fair Notice

"The purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). Indeed, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Laznetta v. New Jersey*, 306 U.S. 451, 453 (1939). As such, "laws must provide explicit standards." *Grayned*, 408 U.S. at 108. Thus, the court must decide whether the Statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). If the Statute fits this description, "it makes no difference that the inscrutable conduct is punished mildly or punished only under certain conditions." *Record Head*, 682 F.2d at 676.[3]

Plaintiffs heavily rely on cases decided almost a century ago to support their argument that the Statute does not provide fair warning. *See U.S. v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921); *Int'l Harvester Co. of Am. v. Com. of Kentucky*, 234 U.S. 216, 221 (1914). In *Cohen*, a grocery store was charged with wilfully and feloniously making an unjust and unreasonable rate and charge in handling and dealing in a certain "necessary." 255 U.S. at 86. The store argued the statute upon which the indictment was based was so indefinite as to not give notice to what was forbidden. *Id.* The trial court

---

[3] As the Seventh Circuit noted, attempts to limit vagueness by easing the sanctions imposed, such as the civil penalties that are present in the Statute here, do not make any difference if the Statute is indeed determined to be unconstitutionally vague. *Record Head*, 682 F.2d at 676.

agreed and held the law to be unconstitutionally invalid because it was "vague, indefinite, and uncertain" while not informing the defendant of the "nature and cause of the accusation against him." *Id*. at 87. The Supreme Court affirmed this holding, stating the section did not forbid a specific or definite act and therefore the scope of the statute prevented anyone from knowing how to adequately guard against it. *Id*. at 89. Similarly, in *International Harvester*, plaintiffs were prosecuted and convicted for entering into an agreement with other companies to control the price of harvesters at a price in excess of their real value. 234 U.S. at 219. The Supreme Court held – over a century ago – that requiring persons "to guess, on peril of indictment, what the community would have given if the continually changing conditions were other than they are . . . is to exact gifts that mankind does not possess," and thus reversed the judgment. *Id.* at 223-24. Neither case is on point, though.

Plaintiffs argue that, because the Court in *Cohen* held the statute was unconstitutional for analyzing the price a reasonable person would charge, the Statute here must be as well since the "reasonable price" for an item is just one consideration of many used to determine whether something is a Lookalike Substance. The court disagrees. While a "necessary" being charged at an "unjust or unreasonable rate" was the crux of the law at issue in *Cohen*, such a consideration is merely one of several non-exhaustive factors for both police officers and the courts to examine when identifying a Lookalike Substance. Though it was ambiguous to base a statute solely on whether an item's price was deemed "unjust or unreasonable," that ambiguity is lessened when other factors are also analyzed to classify a substance. *See Posters 'N' Things, Ltd. v. United*

*States*, 511 U.S. 513, 526 (1994) (stating factors set forth for assessing whether items constitute drug paraphernalia "minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute").  Indeed, a price comparison to the retail market value is simply one factor citizens, the police, and the courts may use in determining whether a reasonable person would believe the substance is a synthetic drug.

Similarly, Plaintiffs rely on *International Harvester* for their argument that such price comparison statutes are problematic because they force them to "exact gifts that mankind does not possess."  234 U.S. at 224.  Such guesswork is not required under the present Statute.  Just as the owner of a grocery store could easily tell you the reasonable retail market value for a gallon of milk, so too should the owner of a store specializing in the sale of aromatherapy products be able to tell you the reasonable market value for a package of potpourri.  Thus, the Statute does not require the omniscient skills described in *International Harvester*.

Plaintiffs further argue that listing factors which *may* be considered, rather than a mandatory or exhaustive list, is fatal to the Statute.  This is not convincing.  Indeed, the Seventh Circuit stated that in a drug paraphernalia ordinance, a non-exhaustive list of factors "direct attention to objective determinations the predicates for which are likely to be susceptible to appropriate re-evaluation: the prosecutor can assess the arresting officer's case, the trial court can put the prosecutor to his proof, and the reviewing court can examine the trial court's findings."  *Levas & Levas v. Vill. of Antioch, Ill.*, 684 F.2d 446, 454 (7th Cir. 1982).  So too here, the factors listed are highly probative in

determining whether a substance is a Lookalike Substance. For example, statements made to the buyer as to the substance's use or effect or statements that imply that the substance is a synthetic drug are clearly relevant in this analysis. *See id*. at 454 (finding factor concerning "statements by the person who owns or controls the object about its use" to be highly probative in drug paraphernalia ordinance). Similarly, the substance's appearance, packaging, color, and other physical characteristics are instrumental in initially identifying all controlled substances, so it is logical to do so here as well. Even if certain factors are not relevant and specific in all circumstances, "the chance that the weaker ones will be relied on is too remote to sustain a facial vagueness attack." *Id*.

Next, Plaintiffs argue that just as *Cohen* lacked an "ascertainable standard of guilt," so too does the Statute. Even though the Statute includes the terms "intentionally" and "knowingly" for criminal violations, Plaintiffs maintain that such scienter language is merely a "circular reiteration of the offense." As such, Plaintiffs argue this language does not save a vague statute because the "thought process of someone other than the deliverer of a substance is still involved." That is, the seller must analyze whether a reasonable person would think the substance is a Lookalike Substance. Defendants reassert that the Statute is not vague, but even if it were, the scienter requirement present in sections with criminal penalties would save it from becoming unconstitutionally vague.[4]

---

[4] The court does not find that the presence or absence of scienter language in the Statute is dispositive to the issue of whether the Statute is unconstitutionally vague. Nevertheless, in the interest of completeness and because such language may mitigate a law's vagueness, the court will evaluate it as such.

A scienter or intent requirement may mitigate a law's vagueness, "especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *See Hoffman Estates*, 455 U.S. at 499. Such a requirement "must envisage not only a knowing what is done but a knowing that what is done is unlawful or, at least, so 'wrong' that it is probably unlawful." *Levas*, 684 F.2d at 453 (quoting Amsterdam, "The Void-for-Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67, 87, n. 98 (1960)). In other words, it should not simply be a "circular reiteration of the offense," such as an intent to sell something that may be classified as a prohibited substance. *Id.*

Here, while no scienter requirement is present in the Statute for offenses which result in a civil infraction, a scienter requirement is present in the Statute for offenses which result in criminal convictions. In particular, the Statute provides:

> A person who possesses a synthetic drug or synthetic drug lookalike substance commits possession of a synthetic drug or synthetic drug lookalike substance, a class B infraction.

Ind. Code § 35-48-4-11.5(b).

> A person who *knowingly or intentionally* possesses a synthetic drug or synthetic drug lookalike substance commits possession of a synthetic drug or synthetic drug lookalike substance, a Class A misdemeanor.

Ind. Code § 35-48-4-11.5(c) (emphasis added).

> A person who *knowingly or intentionally* manufactures; finances the manufacture of; delivers; or finances the delivery of a synthetic drug or synthetic drug looking substance; or
>
> A person who possesses, *with intent to* manufacture; finance the manufacture of; deliver; or finance the delivery of a synthetic drug or synthetic drug lookalike substance; commits dealer in a synthetic drug or synthetic drug lookalike substance, a Class A misdemeanor

Ind. Code § 35-48-4-10.5(c) (emphasis added). Additionally, such violations for dealing in Lookalike Substances may also elevate the penalty to a felony in certain situations, and the same scienter language is in place. Ind. Code § 35-48-4-10.5(d).

Plaintiffs argue that this intent language is circular because the definition of a Lookalike Substance hinges on what a reasonable person deems to be a Lookalike Substance. The court does not agree, as a reasonable person standard is used in many causes of action. *See, e.g.*, *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (stating that Indiana negligence claims are "governed by a standard of the objective reasonable person"); *Herron v. DaimlerChrysler Corp.*, 267 F. Supp. 2d 941, 958 (S.D. Ind. 2003) *aff'd,* 388 F.3d 293 (7th Cir. 2004) ("The test for determining whether harassment is actionable is both subjective and objective; the plaintiff must establish both that a reasonable person would find the harassment created an abusive working environment and that he, in fact, did perceive it to be so."). Accordingly, the court finds an intent requirement is present in the section of the Statute resulting in criminal penalties.

Even assuming, *arguendo*, that the court found no scienter requirement existed, Plaintiffs ignore the alternative definition of a Lookalike Substance: "A substance, other than a synthetic drug that a person knows or should have known was intended to be consumed; and the consumption of which the person knows or should have known to be intended to cause intoxication." Ind. Code § 35-31.5-2-321.5(a)(2). By this definition, the deliverer of a Lookalike Substance would intend to deliver a substance to be consumed that is known to cause intoxication. This is also sufficient to provide the ascertainable standard of guilt that had been lacking in *Cohen*.

Finally, Plaintiffs rely on *Morales* in arguing that the Statute fails to specify a meaningful standard of conduct. 527 U.S. at 60. There, the Supreme Court ruled that a loitering ordinance was facially unconstitutional because it did not provide citizens any guidance as to what conduct was prohibited or permitted. *Id.* Plaintiffs claim that because the ordinance in *Morales* included a reasonable person standard, the presence of one in the Statute deems it unconstitutional. As stated above, the reasonable person standard is not fatal to the Statute and is only one alternative in determining whether a substance falls under the purview of the Statute.

In sum, Plaintiffs have not carried their burden of showing the Statute does not provide fair notice in all applications. *See United States v. Niemoeller*, 2:09-CR-1, 2003 WL 1563863, at * 4 (S.D. Ind. Jan. 24, 2003) (finding statute "may not provide absolute certainty in every case in which a person seeks to experiment in reaching the outermost boundaries of lawful conduct, but that is not the standard for due process. On its face, the statute gives fair notice to persons of average intelligence of the conduct proscribed."); *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 520 (7th Cir. 2010) (finding statute that mandated period of silence in public schools for an indefinite period of time was not vague on its face because the school district's proposed implementation complied with the statute and thus plaintiff failed to show the vagueness of the law in every situation). Even if vague applications exist at the margins of the Statute, this challenge is not the appropriate time to address them. *See Washington*, 552 U.S. at 455 (refusing to uphold facial challenge to voting law on the "mere possibility of voter confusion"); *Levas*, 684 F.2d at 451 ("a finding of unconstitutional vagueness cannot be based on uncertainty at

the margins, or on a parade of bizarre hypothetical cases: problems of that order can be resolved in challenges to the ordinance as applied"). Accordingly, Plaintiffs' argument fails.

### b. Arbitrary Enforcement

The Constitution also requires the legislature to "establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). That is, the "legislature [must commit] itself to a comprehensible definition of an offense, rather than leaving to police or prosecutors or courts the task of defining it on an ad hoc basis." *Levas*, 684 F.2d at 453; *see also Kolender*, 461 U.S. at 358 ("Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections."). However, "the speculative danger of arbitrary enforcement does not render an ordinance void for vagueness in a preenforcement challenge to a law." *Hoffman Estates*, 455 U.S. at 503.

Plaintiffs again rely on *Cohen* in their argument that the Statute does not provide for fair enforcement. There, the Supreme Court found that enforcing the statute at issue "would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury." *Cohen*, 255 U.S. at 89. Plaintiffs contend that the Statute here similarly gives law enforcement "unbridled authority" given the Statute's "reasonable person" standard and the non-exhaustive list of factors which grant them absolute discretion to craft any standard they see fit.

20

The court does not agree.  First, the reasonable person standard does indeed limit law enforcement's actions in enforcing the Statute.  It may not prosecute an individual for possessing or distributing a substance that no reasonable person would believe to be a synthetic drug; rather, the factors must lead a reasonable person to identify the substance as a synthetic drug.  Second, the factors listed in the definition provide law enforcement guidance and help them focus on characteristics that may help identify the substance.  As noted above, these factors are relevant to classifying the substance and do not hinge on arbitrary distinctions.  Although the Statute does not require law enforcement to consider these, that does not mean officers have free reign to create arbitrary classifications.  Third, the Statute lists items which are exempt, thus further limiting law enforcement's reach.  *See Posters 'N' Things*, 511 U.S. at 526 (finding the "exemption for tobacco-related products further limits the scope of the statute and precludes its enforcement against legitimate sellers of lawful products").

Moreover, Plaintiffs again fail to acknowledge the alternative definition for a Lookalike Substance; that is, a substance, other than a synthetic drug, that a person knows or should have known was intended to be consumed, and the consumption of which the person knows or should have known to be intended to cause intoxication.  Ind. Code § 35-31.5-2-321.5(a)(2).  There, specific conduct is listed which must be met for law enforcement to prosecute someone under the Statute.  Thus, Plaintiffs' claim that law enforcement has absolute discretion is unfounded.

Lastly, Plaintiffs argue that the definition for a Lookalike Substance includes "doubtfully relevant, non-mandatory, and non-exhaustive factors that apply to

innumerable substances with multiple uses." For example, Plaintiffs state that pricing and packaging have nothing to do with whether the substance inside is dangerous. Though this may be true, it misses the point. The purpose of the definition is not to identify "dangerous substances"; rather, it is to identify whether a substance is under the purview of the Statute. These factors are helpful in determining what type of substance a reasonable person would think would be inside the packaging. For instance, if a person at a convenience store sees a red aluminum can being sold for fifty cents that has white cursive letters spelling "Coca-Cola," by the price and packaging the consumer knows that inside will be a brown, sugary, and liquid substance. Thus, these are logical factors used to identify a substance and provide guidance for law enforcement.

As to the other factors listed, they are far more probative than those in *Record Head*, which ranged from those of "doubtful relevance" (the license to distribute or sell tobacco products) to "completely irrelevant" (national or local advertising by persons other than ones against whom enforcement is sought). *Record Head*, 682 F.2d at 678. Even more, Plaintiffs focus on these individual factors as if each factor is the sole determinative factor in classifying a substance. Instead, the factors should all be evaluated together in order to determine whether a reasonable person would find the substance to be a synthetic drug. Accordingly, Plaintiffs' argument concerning the factors listed fails. *See Levas*, 684 F.2d at 454 (finding non-exhaustive list of factors in paraphernalia ordinance "constitute effective directions of enforcement activities, and . . . limit the possibilities of arbitrary enforcement"); *Posters 'N' Things*, 511 U.S. at 519 (holding statute not unconstitutionally vague where it listed eight objective factors that

22

may be considered "in addition to all other logically relevant factors" in "determining whether an item constitutes drug paraphernalia").

Plaintiffs have not shown that the Statute "leaves to the arresting or prosecuting authorities the job of determining, essentially without legislative guidance, what the prohibited offense is." *Record Head*, 682 F.2d at 678. Rather, the court finds it provides guidance by listing factors to help identify the substance, exempting other products, and providing an alternative method for explicitly identifying a Lookalike Substance. Thus, Plaintiffs' challenge concerning the arbitrary enforcement of the Statute is rejected.

In sum, Plaintiffs have failed to establish that the Statute is incapable of constitutional application; thus, their facial due process challenge fails. Accordingly, Plaintiffs' motion is DENIED.

### B. Summary Judgment for Nonmoving Party

The court now turns to whether Defendants should be granted summary judgment *sua sponte*. Even when viewing the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, no genuine issues of material fact exist. As discussed in great detail above, the Statute is capable of constitutional application. Accordingly, the court *sua sponte* GRANTS Defendants summary judgment. Because the court *sua sponte* grants summary judgment for Defendants on Plaintiffs' only remaining claim, Plaintiffs' request for a preliminary injunction is DENIED AS MOOT.

### IV. Conclusion

For the reasons set forth above, Plaintiffs' motion for summary judgment (Filing No. 99) is **DENIED**. The court *sua sponte* **GRANTS** Defendants summary judgment on

the remaining due process claim.  As a result, Plaintiffs' alternative motion for a preliminary injunction (Filing No. 99) is **DENIED AS MOOT**.


**SO ORDERED** this 3rd day of September 2014.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.